## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

**TAMMY HOPKINS**                                                        **PLAINTIFF**

**V.**                          **No. 4:22-CV-00697-KGB-ERE**

**KILOLO KIJAKAZI, Acting**
**Commissioner of Social Security**                          **DEFENDANT**

### RECOMMENDED DISPOSITION

This Recommendation Disposition ("Recommendation") has been sent to United States District Judge Kristine G. Baker. You may file objections if you disagree with the findings or conclusions set out in the Recommendation. Objections should be specific and include the factual or legal basis for the objection.

Objections must be filed within fourteen days. If you do not object, you risk waiving the right to appeal questions of fact, and Judge Baker can adopt this Recommendation without independently reviewing the record.

I.    **Background**

On April 21, 2020, Ms. Tammy Hopkins protectively filed an application for benefits due to low vision, fibromyalgia, depression, anxiety with panic attacks, degenerative disc disease, pleurisy, macrocytosis, insomnia, osteoarthritis of the spine, and arthritis. *Tr. 14, 225.*

Ms. Hopkins' claim was denied initially and upon reconsideration. At Ms. Hopkins' request, an Administrative Law Judge ("ALJ") held a telephonic hearing on June 17, 2021, where Ms. Hopkins appeared with her lawyer, and the ALJ heard testimony from Ms. Hopkins and a vocational expert ("VE"). *Tr. 37-80.* The ALJ issued a decision on August 9, 2021, finding that Ms. Hopkins was not disabled. *Tr. 15-26.* The Appeals Council denied Ms. Hopkins' request for review, making the ALJ's decision the Commissioner's final decision. *Tr. 5-10.*

Ms. Hopkins, who was fifty-three years old at the time of the hearing, attended some college and has past relevant work experience as an order clerk, receptionist, CNA, and health-club manager. *Tr. 42-43, 75-76.*

## II.     The ALJ's Decision[1]

The ALJ found that Ms. Hopkins had not engaged in substantial gainful activity since December 1, 2018, the amended alleged onset date. *Tr. 17.* The ALJ concluded that Ms. Hopkins had the following severe impairments: fibromyalgia, osteoarthritis, lumbar spondylosis, cervicalgia, cervical degenerative disc disease and spondylosis, obesity, generalized anxiety disorder, adjustment disorder, depression, posttraumatic stress disorder ("PTSD"), and unspecified trauma. *Id.*

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)-(g).

However, the ALJ found that Ms. Hopkins did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

According to the ALJ, Ms. Hopkins had the residual functional capacity ("RFC") to perform light work, with the following limitations: (1) no climbing ladders, ropes, or scaffolds; (2) only frequent overhead reaching bilaterally; (3) must avoid concentrated exposure to excessive vibration; (4) can make only simple work-related decisions; (5) can maintain concentration, persistence, and pace for only simple tasks; (6) can understand, carry out, and remember simple work instructions and procedures; (7) can adapt to changes in the work setting that are simple, predictable, and can be easily explained; and (8) only occasional and superficial interaction with co-workers, supervisors, and the public. *Tr. 21.*

In response to hypothetical questions incorporating the above limitations, the VE testified that a significant number of potential jobs were available in the national economy that Ms. Hopkins could perform, including price marker and cleaner. *Tr. 77.* Accordingly, the ALJ determined that Ms. Hopkins was not disabled.

## III.   Discussion

### A.   Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

### B.   Ms. Hopkins' Arguments for Reversal

Ms. Hopkins contends that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in: (1) finding that her glaucoma and migraine headaches were non-severe; (2) failing to include manipulative limitations in the RFC; and (3) not ordering an updated psychiatric review technique form from a qualified psychiatrist or psychologist. *Doc. 7 at 1*. After

carefully reviewing and considering the record as a whole, the undersigned recommends affirming the Commissioner's decision.

**C.    Analysis**

      **1.    The ALJ Adequately Considered Ms. Hopkins' Glaucoma and Headaches.**

Ms. Hopkins asserts that evidence of record "demonstrates that [her] glaucoma and headaches would impose 'more than a minimal impact' on her ability to perform basic work-like activities." *Id. at 6.*

The ALJ found both the glaucoma and migraines non-severe because they "did not exist for a continuous period of twelve months, were responsive to medication, did not require significant medical treatment, or did not result in any continuous exertional or non-exertional functional limitations." *Tr. 17.* The ALJ nevertheless "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing" the RFC. *Id.*

Additionally, the supporting records cited by Ms. Hopkins are not as significant as alleged. For example, the March 2018 record involved a primary complaint of gritty, painful, sandy, and scratchy eyes related to "dry eye syndrome." *Tr. 399, 404.* Although an interpretation of a "[f]undus photo" test was "[c]onsistent with [p]rimary open-angle glaucoma," the severity was moderate, and the condition was stable. *Tr. 400, 415, 419, 421, 423, 425, 427, 666.* Although Ms. Hopkins complained of issues with her generic eye drops, the doctor noted that her

impairment was "well controlled on Travatan Z and much better tolerated." *Tr. 669.* "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009) (quotations omitted).

Ms. Hopkins argues that "[r]eports of headache symptoms are repeatedly noted throughout her treatment . . . ." *Doc. 7 at 6-7.* While this is true, many of the references are simply historical references by her primary care physician, not a key complaint for the office visit. For example, although headaches are mentioned repeatedly, the actual reason for the visits were sinusitis, a two-week follow-up on an MRI, sore throat, fatigue, fibromyalgia, anxiety, conjunctivitis, etc. *Tr. 435, 470, 475, 477, 481, 493, 504, 678, 834.* In other words, the repeated reference to headaches is not because they are an underlying, severe impairment. In sum, substantial evidence in the record supports the ALJ's finding that Ms. Hopkins' glaucoma and headaches were non-severe impairments.

## 2.    The RFC Did Not Require Manipulative Limitations.

Ms. Hopkins argues that the RFC should have included manipulative limitations based on her cervical radiculopathy. *Doc. 7 at 7.*

Although Ms. Hopkins reported to doctors several times about numbness and tingling in her hands, these reports are inconsistent with the treating doctors' exam findings. *Tr. 478, 493, 502, 504, 505.* For example, her treating doctors

repeatedly noted: (1) intact sensation and strength in her upper and lower extremities; (2) no focal deficit, no acute distress; and (3) negative for numbness and weakness. *Tr. 470, 477, 478, 494, 505, 659, 696, 787.* Furthermore, Ms. Hopkins' hobby is gardening, and she reports "obsessive cleaning at times," further refuting the argument that she requires additional manipulation limitations. *Tr. 730, 822.*

Ms. Hopkins also argues that "[t]he ALJ's failure to account for functional manipulation limitations stemming from Ms. Hopkins' cervical radiculopathy within the RFC determination was not a harmless error." *Doc. 7 at 9.* Ms. Hopkins' primary care physician suspected cervical radiculopathy and referred her to a neurosurgeon. *Tr. 475.* However, in May of 2019, the neurosurgeon noted that there were "no definitive symptoms of cervical myelopathy and no cervical radiculopathy at this time" and that nothing "worrisome is going on in her neck at this point." *Tr. 369.*

Ms. Hopkins bears the burden of proving her RFC, which represents the most she can do despite the combined effects of her credible limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). "It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own descriptions of [her] limitations." *Id.* In sum, the ALJ need not include additional

functional manipulation limitations, because the severity of her alleged numbness was not supported by the objective medical evidence.

### 3.    An Updated PRT Was Not Necessary.

Ms. Hopkins contends that when the state-agency psychology consultants determined that her mental impairments were non-severe, they did not have the benefit of more recent records which would support a finding that her mental impairments were severe. Accordingly, Ms. Hopkins argues that the ALJ erred by not getting an updated PRT. *Doc. 7 at 11.*

Although the state-agency consultants determined that Ms. Hopkins' mental impairments were not severe, the ALJ ultimately found that she did have severe mental impairments. *Tr. 17*. Following this finding, the ALJ properly discussed all of Ms. Hopkins' mental impairments and the supporting medical records. The ALJ found that Plaintiff had mild limitation "understanding, remembering, or applying information." *Tr. 19*. However, he noted that Ms. Hopkins "denied needing special reminders to take care of her personal needs and grooming and denied needing reminders to take her medication." *Id.* The ALJ discussed that Ms. Hopkins had "been observed to be anxious and distractable with poor insight. . . depressed/anxious with blunted affect and pressured speech . . . anxious . . . irritabl[e], distractible, and angry." *Tr. 23.* He also noted that all other mental examination results were normal. *Id.* These findings were supported by the record.

8

*Tr. 755-757, 760, 766,768, 774, 777, 784, 786, 787, 790, 803, 815, 818.* Furthermore, Ms. Hopkins reported that she was having "better days" and was less argumentative while attending therapy and taking medications. *Tr. 823, 859.* Again, "[i]f an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Brace*, 578 F.3d at 885 (quotations omitted). Accordingly, the ALJ was not required to get an updated PRT.

Ms. Hopkins argues that when there is evidence that indicates the existence of a mental impairment, "an ALJ may not make an initial determination that the claimant is not disabled unless he 'has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable RFC assessment." *Doc. 7 at 11* (citing 42 U.S.C. § 421(h)). However, this requirement applies only with an "initial determination under subsection (a), (c), (g), or (i)," none of which are not involved here. 42 U.S.C. § 421(h). Subsection (d), "which governs hearings by an ALJ when requested by the claimant, is not covered by § 421(h) by its terms." *Riniker v. Berryhill*, No. 16-CV-1035-KEM, 2018 WL 1558276, at *6 (N.D. Iowa Mar. 30, 2018), aff'd sub nom. *Riniker v. Comm'r, Soc. Sec. Admin.*, 764 F. App'x 563 (8th Cir. 2019). Furthermore, "[b]ecause 42 U.S.C. § 421(d) . . . is excluded from § 421(h)'s purview, an ALJ is not required to employ the assistance of a qualified psychiatrist or psychologist in making an initial determination of mental

9

impairment. Instead, the Commissioner's regulations provide an ALJ with greater flexibility than other hearing officers." *Plummer v. Apfel*, 186 F.3d 422, 433 (3d Cir. 1999).

## IV.   Conclusion

The ALJ applied proper legal standards in evaluating Ms. Hopkins' claims, and substantial evidence supports the decision to deny benefits.

IT IS THEREFORE RECOMMENDED that the Court affirm the Commissioner's decision and enter judgment in favor of Defendant.

Dated 1 May 2023.


UNITED STATES MAGISTRATE JUDGE

10